UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JAMES ELLIS,

                       Plaintiff,

                -against-

THE UNITED STATES OF AMERICA, FEDERAL
CORRECTIONS OFFICER FNU DEMARCY,
Individually (the name FNU being fictitious, as the true
first name is presently unknown), FEDERAL BUREAU
OF PRISONS CORRECTION OFFICERS "JOHN DOE"
#1-20, Individually (the name John Doe being fictitious,
as the true names are presently unknown),

                   Defendants.
--------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF CASE**

Plaintiff JAMES ELLIS, by his attorneys, COHEN & FITCH LLP, complaining of the

defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiff brings this action for compensatory damages, punitive damages, and

attorney's fees pursuant to the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), for violations of his civil

rights, as said rights are secured by said statutes and the Constitution of the United States.

2.     On or about or between August 9, 2022, and August 10, 2022, while plaintiff was

in the custody of the defendant UNITED STATES OF AMERICA, Federal Bureau of Prisons

("BOP"), at the Metropolitan Detention Center, located at 80 29th St, Brooklyn, NY 11232,

plaintiff was injured as a result of the intentional acts, negligence, gross negligence, deliberate

indifference, and/or recklessness of the BOP and/or BOP staff and was denied timely and

1

adequate medical treatment in connection with these injuries, upon information and belief, causing additional injuries, pain, and swelling, which required medical treatment/surgery.

3. Plaintiff suffered, *inter alia*, a serious fracture to his jaw, pain, and swelling and was denied timely and/or adequate medical treatment for said injuries. As a result of these serious bodily injuries, plaintiff had to be hospitalized, needed surgical intervention, required ongoing medical treatment, and will likely require future medical treatment and/or surgeries.

## JURISDICTION AND VENUE

4. This action is brought pursuant to the FTCA, Bivens, and pursuant to the Fifth and/or Eighth Amendments to the United States Constitution.

5. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 1346(b), 2671-80, and 1367.

6. Venue is properly laid in the Eastern District of New York under U.S.C. §1391(b), in that this is the District in which the claim arose and pursuant to U.S.C. 1402(b) because the acts and/or omissions giving rise to plaintiff's claims occurred within the Eastern District of New York in Brooklyn, NY.

7. On or about November 17, 2022, plaintiff properly filed his FTCA claims with the United States Federal Bureau of Prisons ("BOP"), by submitting a Standard Form 95 ("SF-95") by certified mail to said agency.

8. The BOP received said SF-95 on November 21, 2022, at approximately 11:42 a.m., and executed a United States Postal Service ("USPS") Return Receipt card, which was returned to plaintiff's counsel's office on or about November 29, 2022. (See Executed Return Receipt and USPS digital tracking showing BOP received plaintiff's SF-95 on November 21, 2022, at approximately 11:42 a.m., annexed hereto as Exhibit ("Ex.") A).

2

9. Thereafter, on or about June 16, 2023, the BOP advised in writing that plaintiff's administrative claim (TRT-NER-2023-02196) was denied (See Administrative Denial, annexed hereto as Ex. B).

10. This action is being filed within six (6) months of the aforesaid denial.

11. Accordingly, plaintiff has complied with all statutory jurisdictional requirements and conditions precedent to commencement and prosecution of this litigation.

## JURY DEMAND

12. Plaintiff respectfully demands a trial by jury as to the Bivens' claims in this matter pursuant to Fed. R. Civ. P. 38(b).

13. Plaintiff respectfully demands an advisory jury as to his FTCA claims pursuant to Fed. R. Civ. P. 39(c).

## PARTIES

14. Plaintiff JAMES ELLIS is and has been at all relevant times a resident of the County of Bronx, in the City and State of New York.

15. Defendant, THE UNITED STATES OF AMERICA ("UNITED STATES") by and through its law enforcement agencies, including the Federal Bureau of Prisons ("BOP"), operated, at all relevant times, the BOP.

16. The BOP is a federal law enforcement/corrections department of the United States government. The BOP is an agency of Defendant UNITED STATES, and BOP corrections officers are authorized by Congress to act under the color of law and within the authority of the United States of America pursuant to federal law.[1]

---

[1] See Pub. L. No. 71-218, 46 Stat. 325 (May 14,1930), wherein Congress established the Bureau of Prisons and charged the agency with the "management and regulation of all Federal penal and correctional institutions."

3

17.     Specifically, officers for the BOP are federal law enforcement officers/corrections officers who are tasked with ensuring the security of federal prisons and providing federal inmates with programs and services on behalf of the UNITED STATES.

18.     At all times hereinafter mentioned, the individually named federal defendants, FEDERAL CORRECTIONS OFFICER FNU DEMARCY ("C.O. DEMARCY"), Individually (the name FNU being fictitious, as the true first name is presently unknown), FEDERAL BUREAU OF PRISONS CORRECTION OFFICERS "JOHN DOE" #1-20 ("BOP C.O.s JOHN DOE #1-20" or "C.O.s JOHN DOE #1-20"), Individually (the name John Doe being fictitious, as the true names are presently unknown), were employed by the defendant UNITED STATES OF AMERICA ("UNITED STATES"), specifically by the BOP, and were acting within the scope and authority of their employment as federal law enforcement/corrections officers, and under the color of law, and within the authority of the United States of America.

19.     THE UNITED STATES at all relevant times was responsible for the hiring, training, supervision, discipline, retention, and promotion of the law enforcement/corrections officers, sergeants, agents, and/or employees of the BOP, a law enforcement/corrections agency of defendant UNITED STATES.

20.     Defendant UNITED STATES is sued for personal injuries to plaintiff caused by the wrongful and/or negligent acts and/or omissions of defendants' agents and/or employees C.O. DEMARCY and/or C.O.s JOHN DOE #1-20, who were acting within the scope of the office or employment under circumstances where the UNITED STATES, if a private person, would be liable to plaintiff in accordance with the laws of the United States and/or the State of New York. *See* 28 U.S.C. § 1346(b).

4

21.    At all times hereinafter mentioned all of the individual defendants (i.e. C.O. DEMARCY and/or C.O.s JOHN DOE #1-20), either personally or through their employees, were acting under color of law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the United States of America.

22.    Each and all of the acts of the individual defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 alleged herein were done by said defendants while acting within the scope of their employment.

23.    Each and all of the acts of the individual defendants C.O. DEMARCY and/or C.O.s JOHN DOE #1-20 alleged herein were done by said defendants while acting in furtherance of their employment.

## **FACTS**

24.    Plaintiff James Ellis was released from custody entirely on November 8, 2023.

25.    However, at all times relevant to this action, Plaintiff, James Ellis, was in the custody of the defendant UNITED STATES, Federal Bureau of Prisons ("BOP"), at the Metropolitan Detention Center ("MDC"), located at 80 29th St, Brooklyn, NY 11232.

26.    On or about or between August 9, 2022, at approximately 9:15 p.m. and August 10, 2022, at approximately 2:00 a.m. while plaintiff was in BOP custody at MDC and was being housed in I-63, 14 Upper, and although it was nearly ninety (90) degrees outside, it was extremely hot and the conditions unbearable, because upon information and belief, BOP C.O.s JOHN DOE #1-20 and/or other relevant United States employees purposely turned off the air conditioning, water, and ventilation in plaintiff's and other inmates' cells for unknown reasons sometime earlier.

27. Alternatively, upon information and belief, BOP C.O.s JOHN DOE #1-20 and/or other relevant United States employees were deliberately indifferent to the plaintiff's conditions of confinement and did not take the proper steps to expeditiously remedy the extremely hot and uncomfortable conditions on said date(s) and thus failed to protect plaintiff against a known risk of substantial harm.

28. Moreover, this was not the first time the air conditioning, water, and/or ventilation was shut off, and said inmates, including plaintiff, were not told the reason(s) for the outages.

29. As a result, on these dates, and prior thereto, plaintiff was subjected to prolonged exposure to extreme temperatures without adequate ventilation; conditions that prevented sleep, which is critical to human existence; unsanitary conditions in a prison cell with respect to the lack of running and/or adequate water, which is a life necessity; combined with other adverse conditions, which both alone or in combination, were conditions that placed plaintiff, a prisoner, at a substantial risk of serious harm in light of contemporary standards of decency.

30. Upon information and belief, said conditions were created purposefully or allowed to remain with deliberate indifference to the health and well-being of the inmates and were objectively sufficiently serious such that the acts of C.O. DEMARCY and/or C.O.s JOHN DOE #1-20 resulted in the denial of the minimal civilized measure of life's necessities vis à vis C.O. DEMARCY and/or C.O.s JOHN DOE #1-20 deliberate indifference to the health and safety of plaintiff herein and other inmates.

31. Nevertheless, due to the fact the water in plaintiff's cell was switched off, at approximately 9:15 p.m. on August 9, 2022, upon evening lockdown, the inmates on this tier, including plaintiff were provided with merely two (2) sixteen-ounce (16 oz) water bottles, which was all the water they were provided until approximately 7:30/8 a.m. the next morning. This was

6

the only water provided to the inmates, for this more than ten (10) hour period, under extremely hot conditions.

32.     Moreover, plaintiff suffers from severe constipation and bowel issues. As a result, he takes medication for this condition, which must be taken with copious amounts of water on account for him to have normal bowel movements.

33.     Consequently, sometime between approximately 9:15 p.m. on August 9, 2022, and 2:00 a.m. on August 10, 2022, plaintiff was hot, dehydrated, and constipated, on account of his medical condition and the BOP's inability to maintain properly functioning basic necessities and/or provide plaintiff with additional water for the duration of the overnight lock-in, and was thus straining to make a bowel movement.

34.     Upon information and belief, plaintiff had made previous complaints about the heat and his need for additional water/fluids, but no additional fluids were provided.

35.     Likewise, as plaintiff attempted to make said bowel movement, he began to strain and became lightheaded on account of being hot, dehydrated, and suffering from a medical condition, and as a result, plaintiff fainted.

36.     As plaintiff fainted, he forcefully hit his face on the toilet/desk stall, which was approximately one (1) foot away from the toilet.

37.     Plaintiff remained unconscious for several minutes, and once plaintiff regained consciousness, he noticed he was bleeding and began to call for help from C.O.s as he was injured, the water in his cell was turned off, and he had used up all the water he was previously provided that evening.

38.     However, despite attempting to obtain medical attention, no C.O.s nor other BOP employees came to his assistance.

39. The next morning, on or about August 10, 2022, upon waking up, plaintiff noticed he was no longer bleeding but that his mouth/jaw was in pain.

40. Likewise, plaintiff attempted to seek medical attention at approximately 7:30/8:00 a.m. that morning by advising a defendant C.O. JOHN DOE that he was in pain and needed immediate medical attention.

41. However, said defendant C.O. JOHN DOE responded by advising plaintiff that because it was a shift change, he could not get medical attention at that time. As a result, plaintiff remained in pain for a period of time and was not treated despite needing immediate medical attention.

42. Thereafter, approximately thirty (30) minutes later, plaintiff again attempted to seek medical attention. As plaintiff waited to speak with the Unit Team about his need for urgent medical attention, he saw the facility dentist, Dr. Brown, who was walking past him and began to speak with him about the fact he was in immense facial pain and needed immediate medical attention.

43. At this time, Dr. Brown advised plaintiff that he would personally take plaintiff down to the medical unit to get him checked out.

44. However, as Dr. Brown and plaintiff were preparing to leave to go to the medical unit, they were approached by defendant C.O. DEMARCY, who requested to know what happened.

45. Plaintiff responded, in sum and substance, that he had forcefully hit his face on the toilet/desk stall the evening before on account of the heat and dehydration and that he was in severe facial pain and required immediate medical attention.

8

46.    However, defendant C.O. DEMARCY immediately responded to plaintiff by stating in sum and substance that he was lying about what happened, that he had probably gotten injured in a fight rather than as plaintiff described, that he was not seriously injured, nor did he need immediate medical attention and that he needed to return to his unit.

47.    As a result, plaintiff was not transported to the medical unit and instead, was made to return to his housing unit.

48.    Plaintiff remained in severe pain in his housing unit for several hours, during which time he continued to complain about the amount of pain he was in to JOHN DOE C.O.'s, but no medical treatment was provided.

49.    Subsequently, at approximately between 11:00 a.m. and 12:00 p.m. on August 10, 2022, plaintiff returned to the Unit Team office and advised that he was injured, in severe pain, and needed immediate medical treatment and/or to go to a hospital.

50.    At this time, rather than escorting plaintiff to the hospital, another defendant C.O. JOHN DOE instead took plaintiff back to see the dentist, Dr. Brown.

51.    Upon arriving at Dr. Brown's office, at approximately between 11:35 a.m. and 12:00 p.m., Dr. Brown looked at plaintiff's face and advised that he would attempt to get plaintiff immediate medical attention as the problem did not appear to be solely a dental problem that he could assist plaintiff with. Dr. Brown noted that plaintiff had swelling on his lower right face and that plaintiff denied being assaulted.

52.    Nevertheless, plaintiff was advised by a defendant C.O. JOHN DOE to return to his housing area and wait.

53.     Accordingly, plaintiff again returned to his housing area, still in severe pain, and still without medical attention, despite the fact plaintiff had been seriously injured since the evening before.

54.     Plaintiff waited in his housing unit for some time, before C.O.s finally came and advised plaintiff they were taking him to the hospital.

55.     Plaintiff did not depart for the hospital until approximately 3:45 p.m. on August 10, 2022.

56.     As a result, plaintiff was denied timely medical attention for approximately over eight (8) hours between the time he first attempted to seek treatment on the morning of August 10, 2022, and the time he was actually transported for treatment at approximately 3:45 p.m.

57.      In addition, plaintiff had actually been attempting to obtain medical treatment since the previous evening (or in the early hours of the morning) when the injury occurred, but was not provided with same nor were his calls for help answered.

58.     Likewise, plaintiff was denied timely and adequate medical treatment for as many as fifteen (15) to eighteen (18) hours from the time when he first attempted to seek help after the injury occurred.

59.     Moreover, at least one (1) of these denials came because defendant C.O. DEMARCY did not believe plaintiff was injured.

60.     Upon arrival at the hospital, plaintiff was assessed and it became clear that plaintiff had a serious facial fracture, including approximately two (2) broken bones in his face, which required invasive surgery to repair, including the complete wiring of plaintiff's jaw and the extraction of one (1) of plaintiff's teeth.

61.    Plaintiff remained at the hospital for approximately two (2) days following this surgery.

62.    Upon release from the hospital, on or about August 12, 2022, plaintiff was transported back to MDC but was not returned to his normal housing unit. Instead, despite the fact plaintiff had not committed any infractions nor received any tickets or misbehavior reports, he was housed in the Secure Housing Unit (SHU).

63.    During the time plaintiff was in the SHU (approximately one (1) week), he was denied his antibiotics and the pain medication he was supposed to be prescribed and was not provided with adequate treatment or medication despite multiple complaints.

64.    In fact, by on or about August 13, 2022, it was clear that plaintiff's medical and nutritional needs were not being met, as officials at MDC were unable to provide plaintiff with sufficient nutrition, in that plaintiff could not consume what was being provided nor sufficient pain management in that the minimal pain medication plaintiff was being sporadically provided was "useless" compared with plaintiff's "unremitting pain."

65.    In fact, doctors treating plaintiff found that the prison was "unable to provide sufficient pain management and nutrition" and told the facility to transfer plaintiff to a local hospital "for higher level of care."

66.    Nevertheless, and despite plaintiff's multiple complaints to multiple defendant C.O. JOHN DOE(s), plaintiff remained at MDC, malnourished and in severe pain.

67.    Thereafter, on or about August 17, 2022, between 11:00 and 11:45 a.m., plaintiff suffered a seizure, for the first time in his life, and had to be transported back to the hospital, upon information and belief, Brooklyn Hospital.

11

68.    Plaintiff remained at the hospital for approximately one (1) day, during which time the wires in his mouth were removed and he was treated for the seizure.

69.    Subsequently, on or about August 18, 2022, plaintiff was transported back to MDC.

70.    Several hours after plaintiff returned to MDC on or about August 18, 2022, plaintiff was finally advised, multiple days following the initial incident, that he needed medical housing, despite the fact plaintiff had been requesting same, and his doctors had told the facility plaintiff needed to receive a higher level of care than what he was receiving at MDC.

71.    However, plaintiff was not immediately transferred into medical housing. In fact, plaintiff remained at MDC for another five (5) days, until on or about August 23, 2022.

72.    Finally, on or about August 23, 2022, after nearly two (2) weeks of neglect by BOP employees, plaintiff was finally transported to Windsor Park Nursing Home where he received antibiotics and other medication.

73.    Plaintiff remained at Windsor Park for approximately three (3) weeks and was then transported back to MDC, where he was again put in the SHU.

74.    Plaintiff remained in the SHU for several more days, without any justification or reason in violation of his rights.

75.    As a result of the foregoing, plaintiff was caused to suffer serious physical injuries and severe pain, requiring multiple surgeries and ongoing medical treatment, and will likely require future medical treatment and/or future additional surgeries.

76.    In addition, as a result of the foregoing, plaintiff was confined to a hospital for several months, and then was further confined to a nursing home and/or to bed for an additional period of time.

77.    As a result of the foregoing, the plaintiff sustained, *inter alia*, physical injuries, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of his constitutional rights as further outlined above.

**FIRST CLAIM FOR RELIEF**
**DELIBERATE INDIFFERENCE TO PLAINTIFF'S HEALTH, WELFARE, & SAFETY**
**UNDER BIVENS**
**(*As to Defendants Demarcy and C.O.s John Doe #1-20*)**

78.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

79.    Plaintiff was subjected to unconstitutional conditions of confinement by defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20.

80.    The deprivations concerning Plaintiff's health, welfare, and safety, as set forth in the proceeding paragraphs, were objectively sufficiently serious such that the acts or omissions of defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20, resulted in the denial of the minimal civilized measure of life's necessities.

81.    Defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20, were deliberately indifferent to the plaintiff's conditions of confinement and did not take the proper steps to expeditiously remedy the extremely hot and uncomfortable conditions on said date and thus failed to protect plaintiff against a known risk of substantial harm.

82.    Defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20, subjected plaintiff to prolonged exposure to extreme temperatures without adequate ventilation; conditions that prevented sleep, which is critical to human existence; unsanitary conditions in a prison cell with respect to the lack of running and/or

adequate water, which is a life necessity; combined with other adverse conditions, which both alone or in combination, were conditions that placed plaintiff, a prisoner, at a substantial risk of serious harm in light of contemporary standards of decency.

83.    Upon information and belief, said conditions were created purposefully or allowed to remain with deliberate indifference to the health and well-being of the inmates and were objectively sufficiently serious such that the acts of C.O. DEMARCY and/or C.O.s JOHN DOE #1-20 resulted in the denial of the minimal civilized measure of life's necessities vis à vis C.O. DEMARCY and/or C.O.s JOHN DOE #1-20 deliberate indifference to the health and safety of plaintiff herein and other inmates.

84.    All of the aforementioned acts of defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20, were carried out under the color of law.

85.    All of the aforementioned acts deprived plaintiff ELLIS of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fifth and/or Eighth Amendments to the Constitution of the United States of America.

86.    The acts complained of were carried out by the aforementioned individual defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 in their capacity as law enforcement/corrections officers with all the actual and/or apparent authority attendant thereto.

87.    The acts complained of were carried out by the aforementioned individual defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 in their capacity as law enforcement/corrections officers, pursuant to the customs, usages, practices, procedures, and rules of the BOP – and were acting within the scope and authority of their employment as a BOP

14

law enforcement/corrections officers, and under the color of law – under the supervision of ranking officers of said department.

88.    Defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, individually, while acting under color of law, engaged in conduct which is forbidden by the laws and Constitution of the United States.

89.    Defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard for plaintiff's rights (i.e. plaintiff's health, welfare, and/or safety) failed or refused to do so.

90.    By their deliberate indifference to plaintiff's welfare and safety, defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, deprived plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under Bivens including, without limitation, rights guaranteed by the Fifth and Eighth Amendments of the United States Constitution.

91.    Defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by Bivens and by the Fifth and Eighth Amendments to the United States Constitution.

92.    As a proximate cause of the acts of defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, plaintiff suffered *inter alia*, severe physical injury, medical expenses, and severe mental and emotional anguish in connection with the deprivation of his aforementioned constitutional and statutory rights.

**SECOND CLAIM FOR RELIEF**
**DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS**
**UNDER BIVENS**
(*As to Defendants Demarcy and C.O.s John Doe #1-20*)

93.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

94.     Defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 knew that plaintiff had sustained severe and serious injuries which required treatment for his injuries.

95.     Notwithstanding this knowledge, all defendants refused to provide adequate medical treatment in a timely fashion and refused to ensure that plaintiff received the proper treatment.

96.     Accordingly, C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, were responsible for the delay and/or denial of adequate medical care to plaintiff.

97.     In so doing, defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 exhibited a deliberate indifference to the health, safety, welfare, and medical needs of plaintiff, in violation of his constitutional rights as secured by the Fifth and Eighth Amendments to the Constitution of the United States.

98.     As a result of defendant C.O. DEMARCY and/or C.O.S JOHN DOE #1-20's deliberate indifference to plaintiff's medical needs, plaintiff suffered immense pain and severe and permanent injuries.

**THIRD CLAIM FOR RELIEF**
**NEGLIGENCE BY FEDERAL LAW ENFORCEMENT/CORRECTIONS OFFICERS**
**UNDER THE FEDERAL TORT CLAIMS ACT**
(*As to Defendant The United States of America*)

99.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

100.    On the aforementioned dates, the plaintiff was within the custody and control of the BOP, and thus defendant UNITED STATES and/or its agents, servants, and/or employees.

101.    Defendant UNITED STATES through its employees, agents, and/or representatives, to wit C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, committed the foregoing acts.

102.    Defendant UNITED STATES through its employees, agents, and/or representatives, to wit C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, did not take any meaningful steps to prevent the foregoing from occurring.

103.    At all times herein defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 were acting in the scope of their employment for defendant UNITED STATES.

104.    Defendant UNITED STATES was negligent, grossly negligent, reckless, and/or careless when it committed the foregoing acts which caused plaintiff injuries.

105.    Defendant UNITED STATES was negligent, grossly negligent, reckless, and/or careless in that defendants failed to take steps to avoid the occurrence; and were otherwise negligent, grossly negligent, careless, and reckless; and, when they failed to prevent the foregoing acts from occurring.

106.    Defendant UNITED STATES had a duty of care in their interactions with plaintiff as a person in their custody.

107.    Defendant UNITED STATES violated their duty of care, which was a direct and proximate cause in bringing about the plaintiff's severe injuries and conscious pain and suffering.

108.    The foregoing incident and the resulting injuries to plaintiff were caused solely and as a direct and proximate cause of the carelessness, negligence, gross negligence, and/or

recklessness on the part of the defendant UNITED STATES, its servants, agents, employees, and/or licensees, and without any negligence on the part of the plaintiff contributing thereto.

109.    Specifically, defendant UNITED STATES had a duty to protect plaintiff, breached said duty, and this failure was objectively unreasonable.

110.    Further defendant UNITED STATES had a duty to provide adequate and timely treatment to plaintiff, as a result of MDC's status as a jail/prison/correctional facility, breached said duty by failing to provide said adequate and timely treatment and this failure was objectively unreasonable.

111.    Defendant UNITED STATES negligently caused injuries by violating its duties to plaintiff, including physical injuries and emotional distress and damage to plaintiff. The acts and omissions of the defendant UNITED STATES were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the United States.

112.    As a direct and proximate result of the foregoing, plaintiff, sustained, *inter alia*, specific and serious bodily injury, emotional distress/psychological and emotional injury, mental anguish, shock, fright, apprehension, embarrassment, humiliation, deprivation of constitutional rights, conscious pain and suffering, costs and expenses, and was otherwise damaged and injured.

**FOURTH CLAIM FOR RELIEF**
**NEGLIGENT HIRING/TRAINING/SUPERVISION/RETENTION**
(*As to Defendant The United States of America*)

113.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

114.    Defendant UNITED STATES negligently hired, screened, retained, supervised, and trained all of the individual defendants, named herein, to wit, C.O. DEMARCY and/or C.O.S JOHN DOE #1-20. The acts and conduct of the individual defendants herein were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the United States.

115.    Defendant UNITED STATES was negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of the BOP, including the defendants individually named above, to wit, C.O. DEMARCY and/or C.O.S JOHN DOE #1-20.

116.    Defendant UNITED STATES selected, hired, trained, retained, assigned, and supervised all members of the BOP, including the defendants individually named above, to wit, C.O. DEMARCY and/or C.O.S JOHN DOE #1-20.

117.    As a direct and proximate result of the foregoing negligence of the defendant UNITED STATES as set forth above, plaintiff, sustained, *inter alia*, serious physical injuries, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, deprivation of constitutional rights, and conscious pain and suffering, and is entitled to compensatory damages and is further entitled to punitive damages against the individual defendants.

118.    As a result of the foregoing, plaintiff suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**FIFTH CLAIM FOR RELIEF**
**<u>NEGLIGENTLY FAILING TO PROTECT</u>**
**<u>UNDER THE FEDERAL TORT CLAIMS ACT</u>**
(*As to Defendant The United States of America*)

119. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

120. The BOP defendants, to wit, C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, have a legal duty to plaintiff as a person detained in their care and custody to provide for the protection of inmates. The BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, breached that duty in negligently operating and managing the facilities by the above-described acts.

121. As a result of the negligence of the defendant UNITED STATES, its agents, servants, and employees, as aforesaid, to wit, C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, plaintiff has suffered extreme emotional harm and serious physical injuries.

122. As a result of the foregoing, plaintiff suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

### SIXTH CLAIM FOR RELIEF
### DENIAL OR DELAY OF MEDICAL CARE AND/OR MEDICATION
### UNDER THE FEDERAL TORT CLAIMS ACT
(*As to Defendant The United States of America*)

123. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

124. Defendant UNITED STATES, via its agents, servants, and employees, as aforesaid, to wit, C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 denied and/or delayed providing plaintiff reasonable, good-faith medical attention while he was in the custody of the BOP.

125. As a result, plaintiff suffered the injuries described above.

95. Defendant's conduct violated the U.S. Constitution, common law, and statutes.

**SEVENTH CLAIM FOR RELIEF**
**DELIBERATE INDIFFERENCE TO PLAINTIFF'S WELFARE & SAFETY**
**UNDER THE FEDERAL TORT CLAIMS ACT**
(*As to Defendant The United States of America*)

126.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

96.    Defendant UNITED STATES via the BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard for plaintiff's rights failed or refused to do so.

97.    Plaintiff was subjected to unconstitutional conditions of confinement by defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20.

98.    The deprivations concerning Plaintiff's health, welfare, and safety, as set forth in the proceeding paragraphs, were objectively sufficiently serious such that the acts or omissions of defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20, resulted in the denial of the minimal civilized measure of life's necessities.

99.    Defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20, were deliberately indifferent to the plaintiff's conditions of confinement and did not take the proper steps to expeditiously remedy the extremely hot and uncomfortable conditions on said date and thus failed to protect plaintiff against a known risk of substantial harm.

100.    Defendants, their agents, servants, and employees, including C.O. DEMARCY and/or C.O.s JOHN DOE #1-20, subjected plaintiff to prolonged exposure to extreme temperatures without adequate ventilation; conditions that prevented sleep, which is critical to

21

human existence; unsanitary conditions in a prison cell with respect to the lack of running and/or adequate water, which is a life necessity; combined with other adverse conditions, which both alone or in combination, were conditions that placed plaintiff, a prisoner, at a substantial risk of serious harm in light of contemporary standards of decency.

101.    Upon information and belief, said conditions were created purposefully or allowed to remain with deliberate indifference to the health and well-being of the inmates and were objectively sufficiently serious such that the acts of C.O. DEMARCY and/or C.O.s JOHN DOE #1-20 resulted in the denial of the minimal civilized measure of life's necessities vis à vis C.O. DEMARCY and/or C.O.s JOHN DOE #1-20 deliberate indifference to the health and safety of plaintiff herein and other inmates.

102.    By their deliberate indifference to plaintiff's welfare and safety, defendant UNITED STATES via the BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 deprived plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, pursuant to the Constitution, common law, and statutes.

103.    The BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 acted under pretense and color of law and in their individual and official capacities and within the scope of their respective employment with the BOP.

104.    The BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 acted willfully, knowingly, and with the specific intent to deprive plaintiff of his rights.

105.    As a proximate cause of the acts of the defendant UNITED STATES and the BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20, plaintiff suffered *inter alia*, physical injury, medical expenses, and severe mental and emotional anguish in connection with the deprivation of his aforementioned constitutional and statutory rights.

**EIGHTH CLAIM FOR RELIEF FOR RELIEF**
**DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS**
**UNDER THE FEDERAL TORT CLAIMS ACT**
(*As to Defendant The United States of America*)

106.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

107.    Defendant UNITED STATES via the BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 knew that plaintiff had sustained a severe and serious injury, which required immediate and adequate medical treatment.

108.    Notwithstanding this knowledge, defendant UNITED STATES via the BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 refused to provide adequate medical treatment in a timely fashion and refused to ensure that plaintiff received the proper treatment.

109.    In so doing, defendant UNITED STATES via the BOP defendants C.O. DEMARCY and/or C.O.S JOHN DOE #1-20 exhibited a deliberate indifference to the health, safety, welfare, and medical needs of plaintiff, in violation of his constitutional rights pursuant to the Constitution, common law, and statutes.

110.    As a proximate cause of the acts of defendant UNITED STATES, plaintiff suffered *inter alia*, physical injury, permanent disfigurement, medical expenses, and severe mental and emotional anguish in connection with the deprivation of his aforementioned constitutional and statutory rights.

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

   i. an order awarding compensatory damages in an amount to be determined at trial;

   ii. an order awarding punitive damages in an amount to be determined at

trial;

iii. reasonable attorneys' fees and costs; and

iv. directing such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs, and disbursements of this action.

Dated: New York, New York
November 9, 2023

BY: _____

ILYSSA FUCHS
GERALD COHEN
JOSHUA FITCH
COHEN & FITCH LLP
*Attorneys for Plaintiff*
233 Broadway, Suite 900
New York, N.Y. 10279
(212) 374-9115
ifuchs@cohenfitch.com
gcohen@cohenfitch.com
jfitch@cohenfitch.com