UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JAMES ELLIS,

                              Plaintiff,                    **MEMORANDUM & ORDER**
                                                           23-CV-8350 (MKB)

                    v.

THE UNITED STATES OF AMERICA, FEDERAL
CORRECTIONS OFFICER WADLEY
DEMORCY, Individually, FEDERAL BUREAU
OF PRISONS CORRECTION OFFICERS "JOHN
DOE" #1-20, Individually (the name John Doe being
fictitious, as the true names are presently unknown),

                              Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff James Ellis commenced the above-captioned action on November 9, 2023

against Defendant the United States of America for various common law claims under the

Federal Tort Claims Act[1] ("FTCA") and against Defendants federal corrections officers Wadley

Demorcy and John Does 1–20 for violations of Plaintiff's Fifth Amendment and Eighth

Amendment rights.  (Compl., Docket Entry No. 1.)  On March 18, 2024, Defendants filed a

premotion conference ("PMC") request for an anticipated motion to dismiss the Complaint.

(Defs.' Letter Mot. for PMC, Docket Entry No. 13.)  On April 12, 2024, in response to

Defendants' PMC request and with leave of the Court, Plaintiff filed an Amended Complaint

adding factual allegations.  (Am. Compl., Docket Entry No. 15.)  Plaintiff narrowed his FTCA

---

[1]  The FTCA claims alleged in the Complaint are negligence by federal law
enforcement/corrections officers, negligent hiring/training/supervision/retention, negligently
failing to protect, denial or delay of medical care and/or medication, deliberate indifference to
Plaintiff's welfare and safety, and deliberate indifference to Plaintiff's medical needs.  (Compl.
¶¶ 99–110, Docket Entry No. 1.)

claims against the United States to negligence, negligent failure to protect, "denial or delay of medical care and/or medication," deliberate indifference to Plaintiff's health, welfare, and safety, and deliberate indifference to Plaintiff's medical needs, and his claims against Demorcy and John Does 1–20 to one claim for deliberate indifference to Plaintiff's medical needs in violation his Fifth Amendment and Eighth Amendment rights.  (*Id.* ¶¶ 91–134.)

On August 5, 2024, Defendants moved to dismiss (1) the FTCA claims for deliberate indifference to Plaintiff's health, welfare, and safety and deliberate indifference to Plaintiff's medical needs against the United States for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); and (2) the deliberate indifference to Plaintiff's medical needs claim against Demorcy for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) based on qualified immunity.[2] Plaintiff opposed the motion.[3]  For the reasons explained below, the Court denies Defendants' motion as to Plaintiff's deliberate indifference claim against Demorcy.  The Court also denies as moot Defendants' motion to dismiss the FTCA claims for deliberate indifference against the United States because Plaintiff has withdrawn the claims.[4]  Because Defendants did not move to dismiss Plaintiff's remaining FTCA claims against the United States for negligence, negligent

---

[2]  (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 24; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 24; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 28.)

[3]  (Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 25.)

[4]  In his opposition to Defendants' motion to dismiss, Plaintiff states that "[u]pon further investigation of the case law surrounding [his] deliberate indifference claims as to [D]efendant United States of America under the FTCA . . . , [he] has decided to withdraw those claims." (Pl.'s Opp'n 19 n.6.)

failure to protect, and "denial or delay of medical care and/or medication" nor his claims against

John Does 1–20,[5] these claims may also proceed.

## I.   Background

On December 21, 2021, Plaintiff was arrested and remanded to the custody of the United

States Federal Bureau of Prisons ("BOP") at Metropolitan Detention Center ("MDC").[6]  (Am.

Compl. ¶ 24.)  On April 13, 2022, Plaintiff pleaded guilty, and on July 28, 2022, the Court

sentenced him to twenty-seven months of imprisonment.  (*Id.* ¶¶ 25–26.)  At all relevant times,

Plaintiff remained incarcerated at MDC.[7]  (*Id.* ¶ 27.)

---

[5]  In their reply brief, Defendants note that "[w]hile the Amended Complaint named at least twenty unidentified [John Doe] defendants, none are identified with any particularity," (Defs.' Reply 9 n.3), but do not argue that the claims against John Does 1–20 should be dismissed.

[6]  The Court assumes the truth of the factual allegations in the Amended Complaint for the purpose of deciding Defendants' motion.

[7]  Plaintiff brings his deliberate indifference to medical needs claim pursuant to both the Fifth Amendment and Eighth Amendment.  (*See* Am. Compl. ¶ 95.)  Because Plaintiff was a sentenced prisoner at the time of the incidents alleged in the Amended Complaint, the Eighth Amendment applies to his deliberate indifference claim against Demorcy.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) ("A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because the right the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of cruel and unusual punishment." (internal quotation marks omitted) (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)), *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017); *Weyant*, 101 F.3d at 856 ("In the context of a convicted prisoner, who has a right under the Eighth Amendment to be free from cruel and unusual punishments, '[a] prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment.'" (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)); *Carter v. United States*, No. 22-CV-6715, 2024 WL 1345313, at *1 n.3 (E.D.N.Y. Mar. 29, 2024) ("The right of a convicted prisoner 'to be free from cruel and unusual punishment,' including 'a prison official's deliberate indifference to a substantial risk of serious harm' is protected under the Eighth Amendment, whereas the rights of 'a pretrial detainee' in federal custody 'are protected by the Due Process Clause' of the Fifth Amendment." (quoting *Weyant*, 101 F.3d at 856)); *see also Cuoco v Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (affirming that plaintiff's deliberate indifference and other claims arose under the Due Process clause of the Fifth Amendment rather than the Eighth Amendment because she was in pretrial detention at the time of the alleged incidents).

### a.    Recurring water, air conditioning, and ventilation outages at MDC

On August 9, 2022, Plaintiff was being housed in MDC "I-63, 14 Upper," and outside temperatures were nearly ninety degrees.  (*Id.* ¶ 32.)  In the weeks leading up to August 9, 2022, the air conditioning, water, and ventilation in Plaintiff's cell block had been shut off "no less than" three times in the hot and humid summer weather.  (*Id.* ¶ 34.)  Plaintiff and other inmates complained to John Does 1–20 and/or Demorcy numerous times, requested to know the reason for the shutoffs, and advised BOP corrections officers and medical staff that they were being subjected to unbearable conditions, including extreme heat and lack of adequate water and ventilation during overnight lock-ins.  (*Id.* ¶¶ 35, 45.)  Plaintiff had made requests to Demorcy and/or John Does 1–20 and to BOP medical staff that he be provided with extra water overnight when the periodic water outages occurred because BOP medical staff had prescribed Plaintiff several medications to facilitate normal bowel movements and lessen constipation and explicitly advised Plaintiff to take the medications with copious amounts of water.  (*Id.* ¶¶ 40–42.)  Plaintiff was not provided with additional water during any outages.  (*Id.* ¶ 42.)

Plaintiff and the other inmates in his cell block were not told the real reasons for the outages.  (*Id.* ¶ 36.)  BOP staff, including John Does 1–20, told them that there were "plumbing issues," that "they were unable to provide further information about the nature of the problem," that "the outages would continue as necessary," and that "they could not provide [P]laintiff or any of the other inmates any update as to when the problem would be fixed."  (*Id.*)  John Does 1–20 "and/or other relevant United States employees" did not take the proper steps to "expeditiously remedy" the "extremely hot and uncomfortable conditions."  (*Id.* ¶ 33.)

### b.    Plaintiff's injuries and requests for medical attention

### i.    Plaintiff's injuries

On August 9, 2022 before 9:15 P.M. and again on August 10, 2022 before 2:00 A.M., John Does 1–20 "and/or other relevant United States employees" purposely turned off the air conditioning, water, and ventilation in Plaintiff's and other inmates' cells for unknown reasons, causing "extremely hot" and "unbearable" conditions inside the MDC.  (*Id.* ¶ 32.)  Before evening lockdown on August 9, 2022, Plaintiff and other inmates were provided with two sixteen-ounce water bottles because of the water shut-off in their cells, and Plaintiff advised several corrections officers that the two bottles of water were not enough and that he needed additional water for the evening.  (*Id.* ¶¶ 39, 43.)  Plaintiff and the other inmates were not provided additional water until approximately 7:30 A.M. or 8:00 A.M. the next morning.  (*Id.* ¶¶ 39, 43.)

During overnight lock-in, between August 9, 2022 at 9:15 P.M. and August 10, 2022 at 2:00 A.M., Plaintiff was hot, dehydrated, constipated, and unable to sleep on account of his medical condition and lack of sufficient water and properly functioning air conditioning and ventilation.  (*Id.* ¶¶ 37, 44.)  He became lightheaded and fainted while straining to make a bowel movement, forcefully hit his face on the stall that was approximately one foot away from the toilet, fractured his jaw, and was unconscious for several minutes.  (*Id.* ¶¶ 46–49.)  Upon regaining consciousness, Plaintiff was bleeding and tried to scream for help from corrections officers but could only muster moaning and groaning because he could not move his mouth completely and was in severe pain from his fractured jaw.  (*Id.* ¶¶ 48–49.)  For approximately forty minutes, Plaintiff attempted to summon corrections officers by banging loudly with his fists and forcefully kicking on his cell door, but no corrections officers or other BOP employee came to his aid.  (*Id.* ¶¶ 49–50.)  Although corrections officers are required to perform rounds

approximately every fifteen minutes, Plaintiff did not see any officers pass his cell, which was located in the top corner of the unit, during the forty minutes he banged on his cell door for help. (*Id.* ¶ 51.)  Plaintiff eventually fell asleep.  (*Id.* ¶ 52.)

### ii.    Plaintiff's requests for medical attention

Upon waking up the morning of August 10, 2022, Plaintiff was no longer bleeding but was still suffering from mouth and jaw pain.  (*Id.*)  At approximately 7:30 A.M. or 8:00 A.M., Plaintiff notified a corrections officer that he was in pain and needed immediate medical attention, but the corrections officer advised Plaintiff that he could not get medical attention at that time because of a shift change.  (*Id.* ¶¶ 53–54.)  Plaintiff remained in pain and again sought medical attention approximately thirty minutes later.  (*Id.* ¶ 55.)  As Plaintiff waited to speak with the "Unit Team," he saw the facility dentist, Dr. Brown, and spoke with him about his immense facial pain and his need for immediate medical attention.  (*Id.*)  While Plaintiff was speaking with Dr. Brown, Demorcy and other corrections officers approached and heard Plaintiff explaining that he had forcefully hit his face on the stall the prior evening due to the heat and dehydration, that he was in severe facial pain, and that he needed immediate medical attention.  (*Id.* ¶¶ 55–56.)  Demorcy and the other corrections officers also heard Dr. Brown advise Plaintiff that he had likely suffered a serious face and jaw injury, needed to be immediately brought to the medical unit for evaluation, and that Dr. Brown would personally escort Plaintiff to the medical unit.  (*Id.* ¶ 56.)  Demorcy immediately responded that Plaintiff was lying about what happened, had probably gotten injured in a fight rather than as Plaintiff described, was not seriously injured, did not require immediate medical attention, and needed to return to his unit.  (*Id.* ¶ 58.)  As a result, Plaintiff was not transported to the medical unit and was ordered to return to his housing unit.  (*Id.* ¶ 59.)  Plaintiff remained in his housing unit, during which time he continued to complain about his severe pain to corrections officers, but he did not receive medical treatment.  (*Id.* ¶ 60.)

Between approximately 11:00 A.M. and 12:00 P.M., Plaintiff returned to the Unit Team's office and advised that he was injured, in severe pain, and needed immediate medical treatment and/or to go to a hospital. (*Id.* ¶ 61.) Rather than escorting Plaintiff to the hospital, a corrections officer took Plaintiff to see Dr. Brown. (*Id.* ¶ 62.) Upon arriving to Dr. Brown's office between approximately 11:35 A.M. and 12:00 P.M., Dr. Brown looked at Plaintiff's face and advised that he would attempt to get Plaintiff immediate medical attention as Plaintiff had swelling on his lower right face, denied being assaulted, and appeared to be suffering from more than a dental issue. (*Id.* ¶ 63.) A corrections officer told Plaintiff to return to his housing area and wait. (*Id.* ¶ 64.) Plaintiff returned to his housing area in severe pain and waited for some time until corrections officers advised him they were taking him to the hospital. (*Id.* ¶¶ 65–66.) Plaintiff departed for the hospital at approximately 3:45 P.M. (*Id.* ¶¶ 67–70.)

### c. Plaintiff's hospitalizations and requests for follow-up care

Upon arrival at the hospital, Plaintiff was evaluated and found to have two broken bones in his face that required invasive surgery to repair, including wiring of his jaw and extraction of one of his teeth. (*Id.* ¶ 72.) Plaintiff remained hospitalized for approximately two days following surgery, and on August 12, 2022, upon release from the hospital, was transported back to MDC but not to his normal housing unit. (*Id.* ¶¶ 73–74.) Plaintiff was taken to the Secure Housing Unit (the "SHU"). (*Id.* ¶ 74.) Plaintiff had not committed any infractions nor received any tickets or misbehavior reports. (*Id.*) Plaintiff remained in the SHU for approximately one week, despite multiple complaints, and was denied his antibiotics, prescribed pain medication, and adequate treatment. (*Id.* ¶ 75.)

By August 13, 2022, Plaintiff was unable to consume the food MDC officials provided him and the minimal pain medication that Plaintiff was given "sporadically" was not helping his "unremitting pain." (*Id.* ¶ 76.) Doctors treating Plaintiff found that MDC was "unable to

provide sufficient pain management and nutrition" and told the facility to transfer him to a local hospital "for [a] higher level of care." (*Id.* ¶ 77.) Despite Plaintiff's multiple complaints to multiple corrections officers, he remained at MDC, malnourished and in severe pain. (*Id.* ¶ 78.)

On August 17, 2022, between 11:00 A.M. and 11:45 A.M., Plaintiff suffered a seizure "for the first time in his life" and was transported to Brooklyn Hospital. (*Id.* ¶¶ 79, 81.) Plaintiff remained at the hospital for approximately one day, during which time the wires in his mouth were removed and he was treated for the seizure. (*Id.* ¶ 80.) On August 18, 2022, Plaintiff was transported back to MDC. (*Id.* ¶ 82.) Several hours later, Plaintiff was advised that he needed medical housing, an accommodation that Plaintiff had been requesting and that his doctors had told MDC that Plaintiff needed in order to receive a higher level of care than MDC was providing. (*Id.* ¶ 83.) Plaintiff was not immediately transferred into medical housing and remained at MDC for another five days. (*Id.* ¶ 84.)

On or about August 23, 2022, nearly two weeks after the incident, Plaintiff was transported to Windsor Park Nursing Home where he received antibiotics and other medication. (*Id.* ¶ 85.) Plaintiff remained at Windsor Park for approximately three weeks and when he was transported back to MDC, he was again put in the SHU. (*Id.* ¶ 86.) Plaintiff remained in the SHU for several days without any justification or reason known to him. (*Id.* ¶ 87.)

Following the incident, Plaintiff remained at MDC and was later transferred to other BOP facilities. (*Id.* ¶ 28.) On November 8, 2023, Plaintiff was released from BOP custody. (*Id.* ¶¶ 29, 31.)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the Complaint] liberally, accepting all factual allegations

therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

## b. Plaintiff has stated a claim that Demorcy violated his Eighth Amendment right to adequate medical care

Defendants argue that Plaintiff fails to show Demorcy's "personal participation in conduct amounting to deliberate indifference to [Plaintiff's] serious medical needs," as the Amended Complaint contains only two factual allegations involving Demorcy that "are simply insufficient" to "allow the inference that [Demorcy], through his own actions, violated Plaintiff's Eighth Amendment rights."  (Defs.' Mem. 6–11; Defs.' Reply 9.)  In support, Defendants

contend that the first allegation, that "[Plaintiff] informed [Demorcy] at some point prior to August 9, the date [Plaintiff] sought medical attention, that he needed additional water when it was shut off overnight in the cells," is a "vague" and "bare assertion" that does not plausibly allege Demorcy's "deliberate indifference to a serious medical need on August 9" because there are no allegations indicating that (a) Plaintiff's "gastrointestinal issues placed him at substantial risk of serious harm" or that Demorcy "was aware of that risk"; (b) "providing only 32 ounces of water during the overnight hours would equate to an 'unnecessary and wanton infliction of pain'"; and (c) Demorcy "knew of and disregarded a substantial risk to [Plaintiff's] health" since Plaintiff "does not allege that [Demorcy] refused him additional water the night he was injured, or even that [Demorcy] was on duty at that time." (Defs.' Mem. 9–10 (citing Am. Compl. ¶¶ 41, 43).) Defendants also contend that Plaintiff's allegation that "his medical condition necessitated additional water for the overnight hours" lacks "factual allegations to support the claim," such as "what medications he was taking, how much water would be sufficient, or even why he needed to take the medication during the lockdown hours, rather than during the day when he could procure water on his own" or Demorcy's "awareness" of "these specifics." (*Id.* at 10.) As to the second allegation, "that around 8:30 [A.M.], [Plaintiff] was talking with a medical professional, Dr. Brown, outside the [U]nit [T]eam office when [Demorcy] inserted himself into the conversation, expressed his disbelief that [Plaintiff] was seriously injured, and ordered him to return to his cell rather than go to the medical unit with Dr. Brown," Defendants argue that Plaintiff has "no facts to establish that [Demorcy] should have inferred that [Plaintiff's] injury was serious and needed immediate attention" or that Demorcy "actually drew the inference." (*Id.* at 10 (citing Am. Compl. ¶¶ 55–56).) Defendants also argue that Plaintiff "does not allege that [his] injuries should have been obvious from his appearance, nor does it allege that Dr. Brown, a medical professional, objected when [Demorcy] ordered [Plaintiff] to return to his cell"

and that from the allegations, "it is reasonable to infer that [Demorcy] believed, as he is alleged to have said, that [Plaintiff] was not seriously injured and did not require immediate medical attention." (*Id.* at 10–11.)

Plaintiff argues that "the fact-intensive nature of [his] claims makes dismissal completely inappropriate at this stage." (Pl.'s Opp'n 14.) In support he contends that (a) "a fully developed medical record" is necessary for the Court to determine whether his condition "constituted a serious medical need"; (b) the determination of whether any delay in Plaintiff's treatment rises "to the level of deliberate indifference" is "highly fact sensitive" and "should be analyzed with regard to all relevant facts and circumstances"; and (c) state of mind cannot be pleaded. (*Id.* at 11–13 (citations omitted).) Plaintiff argues the allegations in his Amended Complaint "have been repeatedly recognized — on numerous grounds — as being sufficient to plausibly state a claim." (*Id.* at 14–15.) He contends that he has sufficiently alleged a serious medical condition "that was recognized, known, and documented by prison doctors" by showing that a physician mandated treatment and that he was "suffering great pain." (*Id.* at 15–16.). He also argues that his allegations amount to a deliberate indifference claim under "all relevant legal standards" in the Second Circuit because they show that Defendants "ignored or otherwise interfered with medically proscribed treatment," establish that his medical requests were ignored for reasons unrelated to his medical condition, and that "Defendants created conditions that exacerbated them." (*Id.* at 13, 17–19.) Plaintiff also argues that the "sufficiency" of his Amended Complaint is "unaffected by [D]efendants self-serving assertions that it was 'reasonable' for [Demorcy] to believe — in the face of medical recommendations to the contrary — that [Plaintiff] was not seriously injured and did not require immediate medical attention." (*Id.* at 18–19 (citation omitted).)

"Congress has never 'provide[d] a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the [f]ederal [g]overnment.'" *Cohen v. Trump*,

No. 23-35, 2024 WL 20558, at *2 (2d Cir. Jan. 2, 2024) (alteration in original) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017)), *cert. denied*, 145 S. Ct. 415 (2024) (mem.). "In 1971, however, the Supreme Court in *Bivens* [*v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)] created an implied cause of action such that 'damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials.'" *Id.* (quoting *Bivens*, 403 U.S. at 395). Because *Bivens* is the creation of federal common law, its application has been limited. *See Ballard v. Dutton*, No. 23-6416, 2024 WL 4039606, at *1 (2d Cir. Sept. 4, 2024) ("*Bivens* provides a cause of action for damages against federal officials for a limited set of constitutional torts." (citing *Egbert v. Boule*, 596 U.S. 482, 490–91 (2022))); *Dotson v. Griesa*, 398 F.3d 156, 166 (2d Cir. 2005) ("Because a *Bivens* action is a judicially created remedy . . . courts proceed cautiously in extending such implied relief[.]"); *Bal v. U.S. Dep't of the Treasury*, No. 21-CV-4702, 2023 WL 6517738, at *2 (S.D.N.Y. Oct. 5, 2023) (citing *Bivens*, 403 U.S. at 396–97) (same). "The Supreme Court has expressly recognized only three contexts in which a *Bivens* remedy is available: unreasonable search and seizure by federal officials in violation of the Fourth Amendment, *Bivens*, 403 U.S. 388; gender-based employment discrimination by a United States Congressman in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and federal prison officials' deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980)." *Ballard*, 2024 WL 4039606, at *1 (citing *Ziglar*, 582 U.S. at 130–31). "Since *Carlson*, however, the Supreme Court has repeatedly declined to extend *Bivens*, warning that 'recognizing a cause of action under *Bivens* is "a disfavored judicial activity."'" *Id.* (quoting *Egbert*, 596 U.S. at 491); *Atterbury v. U.S. Marshals Serv.*, 941 F.3d 56, 62 (2d Cir. 2019) ("[E]xpanding the *Bivens* remedy is now a disfavored judicial activity." (quoting *Ziglar*, 582 U.S. at 135)).

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment[,] . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (alterations in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see Smith v. New York State*, No. 23-6601, 2024 WL 4746554, at *2 (2d Cir. Nov. 12, 2024) ("The Eighth Amendment requires prison officials to 'provide humane conditions of confinement' by 'ensur[ing] that inmates receive adequate . . . medical care . . . .'" (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994))); *Nazario v. Thibeault*, No. 22-1657, 2023 WL 7147386, at *2 (2d Cir. Oct. 31, 2023) ("[D]eliberate indifference to a prisoner's 'serious medical needs' constitutes cruel and unusual punishment in contravention of the Eighth Amendment." (quoting *Estelle*, 429 U.S. at 106)); *Walker v. Schult*, 45 F.4th 598, 610 (2d Cir. 2022) ("Cruel and unusual punishment in violation of the Eighth Amendment can take many shapes, whether by design, . . . or by deliberate indifference, for example to a prisoner's serious medical needs[.]" (citing *Estelle*, 429 U.S. at 103–05)). "An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.'" *Gibson v. St. Elizabeth Med. Ctr. Hosp. Exec. Dir.*, No. 22-1868, 2023 WL 3295843, at *2 (2d Cir. May 8, 2023) (alteration in original) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "The standard of deliberate indifference includes both subjective and objective components." *Mallet v. N.Y. State Dep't of Correc. & Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The objective component requires a plaintiff to "show that, while he was incarcerated, he suffered from a medical condition that is, 'in objective terms, sufficiently serious.'" *Id.* (quoting

*Chance*, 143 F.3d at 702). "Though there is no single metric," the Second Circuit has held "that a 'sufficiently serious' medical condition in the Eighth Amendment context refers to a 'condition of urgency that may result in degeneration or extreme pain,' that 'significantly affects daily activities,' or that involves 'chronic and substantial pain.'" *Id.* (first quoting *Chance*, 143 F.3d at 702; and then quoting *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)). The Second Circuit has considered "whether a reasonable doctor or patient would find the injury important and worthy of treatment." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (quoting *Chance*, 143 F.3d at 702); *see Mallet*, 126 F.4th at 141–42 (Menashi, J., dissenting) (explaining that whether a medical condition is a "serious one" includes a consideration of "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment" (quoting *Chance*, 143 F.3d at 702)); *Bradshaw v. City of New York*, 855 F. App'x 6, 10 (2d Cir. 2021) (same); *LoCurto v. U.S. Bureau of Prisons*, No. 23-CV-387, 2024 WL 4884343, at *8 (E.D.N.Y. Aug. 12, 2024) (quoting *Charles*, 925 F.3d at 86) (same), *report & recommendation adopted*, 2024 WL 4880666 (E.D.N.Y. Nov. 25, 2024). An additional factor is whether "the denial of treatment 'could result in further significant injury or the unnecessary and wanton infliction of pain,'" *Abreu v. Lipka*, 778 F. App'x 28, 31–32 (2d Cir. 2019) (quoting *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)). "The condition need not be 'life-threatening' or 'at the limit of human ability to bear,' but it must be more than simply 'uncomfortable and annoying.'" *Mallet*, 126 F.4th at 132 (quoting *Brock*, 315 F.3d at 163). "The question will be whether a plaintiff plausibly alleges a condition that produces severe and unmanaged pain." *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 30 (2d Cir. 2023).

"When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment," courts may "focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical*

14

*condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious.'" *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance,* 143 F.3d at 702); *see also Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (quoting same); *Culbreth v. Manuel*, No. 24-CV-497, 2025 WL 35059, at *6 (S.D.N.Y. Jan. 6, 2025) ("When medical treatment was provided but a complaint alleges that treatment was delayed or inadequate, the relevant concern is the 'particular risk of harm faced by a prisoner due to the challenged deprivation of care.'" (quoting *Carpenter*, 316 F.3d at 186)); *Kimbrough v. Malloy*, No. 24-CV-1572, 2024 WL 5146525, at *3 (D. Conn. Dec. 17, 2024) ("Where, as here, the claim is that medical treatment was improperly delayed, the injury for the objective component focuses on the effect of the delay rather than the underlying medical condition itself." (citing *Carpenter*, 316 F.3d at 186)). "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Carpenter*, 316 F.3d at 186 (citing *Chance*, 143 F.3d at 702–03); *Alvarez v. Wright*, 797 F. App'x 576, 579 (2d Cir. 2019) ("If the basis of the complaint is a temporary delay, . . . it is appropriate to focus on the effect of that challenged delay in treatment in determining whether the risk was objectively serious." (citing *Carpenter*, 316 F.3d at 186)); *Hanrahan v. Mennon*, 470 F. App'x 32, 33 (2d Cir. 2012) ("Where the challenge is to the adequacy of the treatment provided, such as in cases where treatment is alleged to have been delayed or interrupted, the seriousness inquiry focuses on 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.'" (quoting *Carpenter*, 316 F.3d at 186)); *Kerr v. DelPeschio*, No. 19-CV-988, 2024 WL 148241, at *8 (D. Conn. Jan. 12, 2024) (quoting same). Courts may consider "[t]he absence of adverse medical effects or demonstrable physical injury" in determining whether the delay

15

caused a risk of harm. *Carpenter*, 316 F.3d at 187; *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (same); *Khozouri-Zadeh v. Cnty. of Nassau*, No. 21-CV-4601, 2025 WL 343465, at *6 (E.D.N.Y. Jan. 30, 2025). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, *see Archer v. Dutcher,* 733 F.2d 14, 16–17 (2d Cir. 1984); ignored a 'life-threatening and fast-degenerating' condition for three days, *Liscio v. Warren,* 901 F.2d 274, 277 (2d Cir.1990); or delayed major surgery for over two years, *see Hathaway v. Coughlin,* 841 F.2d 48, 50–51 (2d Cir. 1988)." *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999); *see Sims v. City of New York*, 788 F. App'x 62, 64 (2d Cir. 2019) (quoting same); *Mills v. Travers*, No. 20-CV-3035, 2024 WL 1858224, at *4 (E.D.N.Y. Apr. 29, 2024) (same).

The subjective component requires a plaintiff to "establish that [the defendants] acted with a 'sufficiently culpable state of mind,'" *Mallet*, 126 F.4th at 132 (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)), and "show that the acts or omissions of [the defendants] 'evince[d] a conscious disregard of a substantial risk of serious harm,'" *id.* (second alteration in original) (quoting *Darby*, 14 F.4th at 128). "The plaintiff must prove that the official 'had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it.'" *Nazario*, 2023 WL 7147386, at *2 (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020)). Moreover, "a deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) (citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987)); *see Rodriguez v. Manenti*, 606 F. App'x 25, 27 (2d Cir. 2015) (same); *Ellis v. Kim*, No. 23-CV-5309, 2024 WL 4882702, at *6 (S.D.N.Y. Nov. 25, 2024) (same); *Crispin v. Peiri*, No. 21-CV-475, 2023 WL 2931846, at *7 (D. Conn. Apr. 13, 2023) (same); *Raynor v.*

*Feder*, No. 20-CV-1343, 2021 WL 431457, at *5 (D. Conn. Feb. 8, 2021) (same); *see also Gill*, 824 F.2d at 196 ("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors.").  District courts in the Second Circuit have found a deliberate indifference claim against corrections officers and other nonmedical personnel based on delayed treatment where "a plaintiff . . . prove[s] that [the nonmedical] prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and ha[d] made his medical problems known to the attendant prison personnel." *Hodge v. Coughlin*, No. 92-CV-622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995); *see Mehalick v. Stowell*, No. 24-CV-775, 2024 WL 4930660, at *7 (N.D.N.Y. Dec. 2, 2024) (quoting *Dumel v. Westchester Cnty.*, No. 19-CV-2161, 2021 WL 738365, at *10 (S.D.N.Y. Feb. 25, 2021)); *Ibbison v. Scagliarni*, No. 23-CV-1379, 2024 WL 4904636, at *10 (D. Conn. Nov. 27, 2024) (quoting *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *6 (S.D.N.Y. Mar. 28, 2018)); *Morrison v. United States*, No. 17-CV-6779, 2019 WL 5295119, at *5 (S.D.N.Y. Oct. 18, 2019) (quoting same; *Cannenier v. Skipper-Scott*, No. 18-CV-2383, 2019 WL 764795, at *7 (S.D.N.Y. Feb. 20, 2019) (quoting same); *Scott v. Abate*, No. CV-93-4589, 1995 WL 591306, at *5 (E.D.N.Y. Sept. 27, 1995) (quoting *Hodge*, 1994 WL 519902, at *11).  "At a minimum, there must be at least some allegations of a conscious or callous indifference to a prisoner's rights." *Hodge*, 1994 WL 519902, at *11 (citation omitted); *see Bright v. Annucci*, No. 18-CV-11111, 2024 WL 3012043, at *7 (S.D.N.Y. June 13, 2024) (quoting *Hodge*, 1994 WL 519902, at *11).  However, "prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment" if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844; *see Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006) (first quoting *Farmer*, 511 U.S. at 844), *abrogated on other grounds as recognized by*

*Tripathy v. McKoy*, 103 F.4th 106 (2d Cir. 2024); and then quoting *Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023)); *Allen v. Koenigsmann*, 700 F. Supp. 3d 110, 140 (S.D.N.Y. 2023) ("If the charged official 'knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent,' then the official did not act with deliberate indifference." (quoting *Salahuddin*, 467 F.3d at 281)).

> **i. Plaintiff has sufficiently alleged that his injuries constituted an objectively serious medical need**

Construing the Amended Complaint liberally and drawing all permissible inferences in Plaintiff's favor, Plaintiff has alleged that he sustained an objectively serious injury as he was knocked unconscious, suffered severe mouth and jaw pain, broke two bones in his face, and required a complete jaw wiring and a tooth extraction after falling and forcefully hitting his face on the toilet stall. *See Marino v. Koenigsmann*, No. 12-CV-1170, 2014 WL 1239514, at *6 (N.D.N.Y. Mar. 25, 2014) (concluding that the plaintiff's "allegations that he hit his head, causing him to fracture his jaw, loose three teeth and be rendered unconscious, in addition to his claims that he experienced severe pain and difficulty eating and sleeping" were "more than sufficient to plausibly allege that he suffered from an objectively serious underlying injury"). Plaintiff has also alleged that Demorcy intentionally denied him treatment for his injuries by ordering him to return to his housing unit despite overhearing Plaintiff recount the details of his injury to Dr. Brown and despite hearing Dr. Brown inform Plaintiff that he "had likely suffered a serious injury to his face/jaw," "needed to be immediately brought to the medical unit for evaluation," and that Dr. Brown would escort him for treatment.  (Am. Compl. ¶¶ 56, 58.)

Because Plaintiff ultimately received medical care after Demorcy refused to allow it, the Court also considers the delay in treatment to determine whether his injury was, "in 'objective terms, sufficiently serious.'"  *Carpenter*, 316 F.3d at 185 (quoting *Chance*, 143 F.3d at 702).

Plaintiff spoke with Dr. Brown and Demorcy ordered him to return to his cell around 8:30 A.M. or 9:00 A.M. on the morning of August 10, 2022. (*See* Am. Compl. ¶¶ 53–56.) Plaintiff alleges that he remained in his cell until between 11:00 A.M. and 12:00 P.M. when a different corrections officer escorted him to see Dr. Brown again, at which time Dr. Brown said that he would attempt to get Plaintiff medical attention, which Plaintiff received sometime after 3:45 P.M. when he departed for the hospital. (*Id.* ¶¶ 61–67.) Based on this sequence of events, Demorcy's refusal to allow Plaintiff to be treated delayed Plaintiff's medical care by at least three and a half hours. The delay in treatment appears brief but, as the parties agree, (*see* Defs.' Mem. 13; Pl.'s Opp'n 12), the length of the delay in treatment alone is not dispositive of an objectively serious need. *See Allen v. N.Y.C. Dep't of Corr.*, No. 06-CV-7205, 2010 WL 1644943, at *13 (S.D.N.Y. Mar. 17, 2010) ("The notion that there is a bright line separating short delays from longer delays and that delays less than a specified amount of time are too brief to demonstrate deliberate indifference is not reflected in the case law." (citations omitted)), *report & recommendation adopted*, 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010); *see also Carpenter*, 316 F.3d at 186 (noting that "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner"). Although Plaintiff does not allege directly that the delay in treatment exacerbated his injuries or put him at risk of greater harm, the Court notes that the second time Plaintiff saw Dr. Brown, he appeared to indicate for the first time that Plaintiff "had swelling on his lower right face," (*see* Am. Compl. ¶ 63), a symptom that could have developed during Plaintiff's three and a half hour wait in his cell. *Cf. Valdiviezo*, 752 F. App'x at 32 (affirming dismissal of claim based on delay in medical care because, although the plaintiff alleged that he was in pain during the hour-long wait, he did not allege that the delay exacerbated the injuries from his initial fall).

Regardless, in light of the severity of Plaintiff's injury and pain as evidenced by Dr.

Brown's advisement that Plaintiff had likely suffered a serious injury and needed immediate medical attention and Plaintiff's subsequent surgery and two-day hospital stay, the Court cannot conclude at this stage of litigation that the delay was not objectively serious merely because it is not clear that Plaintiff's injuries worsened after he was initially denied treatment. *See Hunter v. City of New York*, 35 F. Supp. 3d 310, 320 (E.D.N.Y. 2014) (declining to "afford [d]efendants the benefit of having delayed [p]laintiff's visit to a medical provider by drawing an inference in their favor from the fact that [p]laintiff's [injuries] may not have worsened or improved during that time"); *McMillon v. Davidson*, 873 F. Supp. 2d 512, 514 (W.D.N.Y. 2012) ("Severe pain can itself constitute a serious medical need for Eighth Amendment purposes." (citations omitted)).

### ii. Plaintiff has alleged the subjective component of the deliberate indifference claim — that Demorcy acted with a sufficiently culpable state of mind

As to the subjective prong of the Eighth Amendment deliberate indifference claim, although close, the Court finds that Plaintiff has sufficiently pleaded that Demorcy consciously disregarded a substantial risk of harm to Plaintiff. Plaintiff's allegation that Demorcy heard Plaintiff tell Dr. Brown "that he had forcefully hit his face on the toilet/desk stall the evening before on account of the heat and dehydration, that he was in severe facial pain, and that he needed immediate medical attention, (Am. Compl. ¶ 56), indicates that Demorcy at a minimum knew Plaintiff was experiencing extreme pain. *Mehalick*, 2024 WL 4930660, at *7 ("[A] plaintiff must prove that [the] nonmedical prison personnel intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel . . . ." (second alteration in original)); *Bright*, 2024 WL 3012043, at *8 (concluding plaintiff "succinctly and sufficiently state[d] a deliberate indifference claim" by alleging that he told specifically named guards responsible for his custody and care "of his condition and the excruciating pain, he was suffering," and that they "failed to take appropriate

action to get [him] the medical help he required, despite knowledge of the risk to his health" (internal quotation marks omitted)); *Jones v. Rock*, No. 12-CV-447, 2013 WL 4804500, at *23 (N.D.N.Y. Sept. 6, 2013) (finding deliberate indifference where corrections officer knew the plaintiff was in extreme pain and needed dental care and waived away another corrections officer who tried to take the plaintiff to see a dental provider and stated that "[p]laintiff would see the dentist last if he saw him at all").

Moreover, even if Demorcy did not himself believe Plaintiff's claims, as Plaintiff alleges, Demorcy heard Dr. Brown advise that Plaintiff "likely suffered a serious injury," needed immediate medical evaluation, and he would personally escort Plaintiff for evaluation. (Am. Compl. ¶ 56.) Based on these allegations, the Court infers that Demorcy knew Plaintiff was seriously injured and that he needed immediate medical attention. *See Matzell*, 64 F.4th at 434 ("[O]n a motion to dismiss . . . , 'the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.'" (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004))). Thus, in stating that Plaintiff "was lying about what happened, that he had probably gotten injured in a fight rather than as [P]laintiff described, that he was not seriously injured, nor did he need immediate medical attention and that he needed to return to his unit," (*id.* ¶ 58), Plaintiff has alleged that Demorcy "evince[d] a conscious disregard of a substantial risk of serious harm,'" *Mallet*, 126 F.4th at 132 (alteration in original), and "deliberately ignore[d] the recommendation of [Plaintiff's] treating physician[]," *Johnson*, 412 F.3d at 404; *see, e.g.*, *Crispin*, 2023 WL 2931846, at *7 (permitting deliberate indifference claim to proceed where prison official allegedly ignored mental health provider's recommendation that plaintiff be sent for mental health treatment); *Raynor*, 2021 WL 431457, at *5 (finding prisoner alleged "serious deprivation of medical care" where he alleged that he had not received physical therapy for his chronic

21

shoulder condition despite the medical recommendation that he receive treatment); *Quinones v. City of New York*, No. 16-CV-985, 2017 WL 1322205, at *9 (S.D.N.Y. Jan. 6, 2017) (finding allegation that the defendant "officer was expressly informed by a doctor" that plaintiff needed "immediate corrective surgery" and ignored the recommendation stated a deliberate indifference claim), *report & recommendation adopted*, 2017 WL 775851 (S.D.N.Y. Feb. 28, 2017).

Although Demorcy said that Plaintiff was lying and was not severely injured, this allegation alone does not establish that Demorcy did not act with deliberate indifference, particularly in light of the allegations that Demorcy disregarded the statements of both Plaintiff and Dr. Brown regarding Plaintiff's injuries. The Court also does not infer from this allegation that Demorcy "believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," *Farmer*, 511 U.S. at 844, such that he would be freed from liability at this stage of litigation. *Id.* (explaining that "[p]rison officials charged with deliberate indifference" may escape liability by "show[ing], for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"); *see Hudson v. Heath*, No. 12-CV-1655, 2014 WL 4364897, at *9 (N.D.N.Y. Aug. 29, 2014) (rejecting defendants' argument that prison official did not act with deliberate indifference on ground that she "was sincerely, if unreasonably, convinced that her conduct did not pose a risk of serious harm to [p]laintiff" because plaintiff sufficiently alleged that the official "consciously [chose] an 'easier and less efficacious' treatment plan" and "[g]iven the need for evidence of [her] knowledge and motives . . . granting the motion to dismiss would be unjust toward the [p]laintiff" (quoting *Chance*, 143 F.3d at 703)).

### iii.   Plaintiff does not sufficiently allege a claim for deliberate indifference to serious medical needs based on Demorcy's failure to provide him additional water for his medication

Plaintiff alleges that Demorcy failed to respond to his requests for additional water before the overnight lock-in from August 9 to August 10, during which time he sustained injuries from his bowel movement.  (Am. Compl. ¶¶ 42, 44–47.)  To the extent Plaintiff is alleging that the failure to provide additional water constituted Demorcy denying or delaying a serious medical need for water to take constipation medication, the deliberate indifference claim fails against Demorcy because Plaintiff does not plausibly allege that Demorcy knew that he needed the water for his medication to be effective.  Plaintiff alleges that:

> In fact, in connection with [P]laintiff's constipation and bowel issues, BOP medical staff provided plaintiff with several different medications which would assist him in having normal bowel movements and less constipation and explicitly advised [P]laintiff these medications needed to be taken with an abundance of water, and thus BOP medical staff, [Demorcy] and/or [John Does 1–20] were aware [P]laintiff needed to be provided with more than just two (2) sixteen-ounce (16 oz) water bottles during the overnight lock in.

(Am. Compl. ¶ 41.)  This allegation does not indicate that Plaintiff or BOP medical staff told Demorcy, or any other corrections officer, that Plaintiff needed water for his medication. Therefore, the allegation that Demorcy was aware that he needed the water is not supported by any factual allegations.[8]  *See Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  (citation omitted)); *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders

---

[8]  To the extent Plaintiff is also alleging that any of John Does 1–20 denied or delayed Plaintiff's need for additional water to take his constipation medication, the deliberate indifference claim against them would fail for the same reason as the claim against Demorcy — Plaintiff does not plausibly allege that any correctional officer was aware that he needed the water for his medication to be effective.

Case 1:23-cv-08350-MKB-LKE   Document 29   Filed 03/24/25   Page 24 of 31 PageID #: 170

'naked assertion[s]' devoid of 'further factual enhancement.'"  (citation omitted and alteration in original)).

Plaintiff alleges that he was being treated by a doctor for constipation, which supports that "a reasonable doctor or patient would find the injury important and worthy of treatment," a factor that courts have found supports a serious medical need.  *Charles*, 925 F.3d at 86 (quoting *Chance*, 143 F.3d at 702).  However, the fact that Plaintiff was without adequate water for the medication prescribed to treat his constipation for the temporary period that the water outages occurred does not give rise to a deprivation of medical care claim.  *See Thomas v. Hpopkins*, No. 20-CV-9709, 2022 WL 2758489, at *5 (S.D.N.Y. July 14, 2022) (collecting cases and noting that district courts in the Second Circuit "have held that the denial of a single dose, or even several doses, of a needed medication is insufficient, without more, to establish a serious delay in treatment under the Eighth Amendment").  Moreover, courts have found that gastrointestinal issues similar to Plaintiff's do not alone plead a claim for a serious medical need for purposes of an Eighth Amendment deliberate indifference claim absent allegations that the issues were a "condition of urgency that may result in degeneration or extreme pain," "significantly affects daily activities," or "involves chronic and substantial pain."  *Mallet*, 126 F.4th at 132 (internal quotation marks and citations omitted); *see Castro v. Lupis*, No. 22-CV-152, 2022 WL 21751798, at *4 (D. Conn. June 13, 2022) (plaintiff sufficiently pleaded his rectal pain was a serious medical need based on allegations that "he was suffering excruciating pain that impacted his sleep and daily activities," the pain "prevent[ed] him from sitting and walking normally" and the condition required surgical correction (alteration in original)); *Harnage v. Shari*, No. 16-CV-1576, 2019 WL 7835666, at *5 (D. Conn. Dec. 3, 2019) (plaintiff sufficiently pleaded constipation was a serious medical need where he alleged the "chronic" condition "caused him severe pain and bleeding from his rectum" and painful, swelling, and bleeding hemorrhoids).

24

c.    **Demorcy is not entitled to qualified immunity**

Defendants argue that Demorcy is entitled to qualified immunity because Plaintiff has not plausibly alleged that Demorcy personally participated "in conduct amounting to deliberate indifference to [Plaintiff's] serious medical needs," (Defs.' Mem. 6–11), nor that Demorcy violated a clearly established constitutional right of Plaintiff's, (*id.* at 11–14).   Defendants argue that "[w]hile the general right to adequate medical care under the Eighth Amendment is not in question, it is in no way clear that in the circumstances of this case, every reasonable official would have understood that [Plaintiff] had an Eighth Amendment right to receive immediate medical care." (*Id.* at 12 (citations omitted)).   In support, Defendants contend that it is not "obvious" that "the smaller portion" of the delay in Plaintiff's treatment "solely attributable to [Demorcy] (which is all Demorcy can be held accountable for) or the total delay, which includes the actions of a number of unidentified officers" was unconstitutional under Supreme Court or Second Circuit precedent. (*Id.* at 13.)   Defendants also argue that it is not apparent based on the allegation that Demorcy "actually drew the inference that [Plaintiff] needed immediate care and ordering him back to his housing unit would place [Plaintiff] at risk of serious harm," and that even if Demorcy made this assessment, "it was not clearly unreasonable in the moment" because Plaintiff "does not allege that his appearance should have made it obvious that he needed immediate medical assistance, he was holding a conversation with Dr. Brown at the time, and Dr. Brown apparently did not object to [Demorcy's] instruction." (*Id.* at 13–14.)

Plaintiff argues that the "defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion" under Second Circuit precedent, (Pl.'s Opp'n 11 (internal quotation marks and citations omitted)), and contends that "[b]ecause *all* of defendants' arguments appear under the *singular* headline of qualified immunity, there is no need to address any of their arguments arguably related to the merits" and "while [D]efendants have made a personal involvement

argument, they have done so under the rubric of qualified immunity, which . . . is inapplicable," (Pl.'s Opp'n 9–10)  In support, Plaintiff argues that "it is firmly established that the question of qualified immunity is a mixed question of law and fact," making "a court's determination of qualified immunity at any pretrial stage . . . inappropriate" when "resolution of the qualified immunity defense hinges upon disputed factual issues, or upon mixed questions of fact and law." (Pl.'s Opp'n 11 (internal quotation marks and citations omitted).)  He argues that the qualified immunity defense is inapplicable because "Eighth Amendment Claims for deliberate indifference require a knowing disregard of constitutional rights."  (*Id.* at 7.)  In addition, Plaintiff argues that plausible allegations of "deliberate indifference necessarily precludes a finding of qualified immunity" and that it "logically follows that the very nature of the deliberate indifference standard forecloses entitlement to qualified immunity" and that a "find[ing] [of] that level of indifference" would be "enough" to effectively "*preclude* qualified immunity."  (*Id.* at 7–9 (alterations in original and citations omitted).)

"Any claim for damages against officials in their individual capacities . . . 'implicates the doctrine of qualified immunity.'" *Tanvir v. Tanzin*, 120 F.4th 1049, 1059 (2d Cir. 2024) (quoting *Tripathy*, 103 F.4th at 116).  "That doctrine 'shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)); *see also Cerisier v. City of New York*, No. 22-1756, 2023 WL 4618352, at *1 (2d Cir. July 19, 2023) ("The doctrine of qualified immunity shields government officials from suit unless (1) 'the official violated a statutory or constitutional right,' and (2) 'the right was "clearly established" at the time of the challenged conduct.'"  (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) ("The doctrine of qualified immunity 'shields [officers] acting in their official capacity from suits for damages unless their

26

actions violate clearly-established rights of which an objectively reasonable official would have known.'" (quoting *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006))). When an official invokes the qualified immunity defense, courts must "apply a two-step analysis" under which a defendant-official is shielded "from money damages unless the 'plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Tanvir*, 120 F.4th at 1060 (quoting *Ashcroft*, 563 U.S. at 735); *see Pal v. Canepari*, No. 23-730, 2024 WL 4341360, at *1 (2d Cir. Sept. 30, 2024) ("Qualified immunity can shield defendants from constitutional claims where their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017))); *Soukaneh v. Andrzejewski*, 112 F.4th 107, 115 (2d Cir. 2024) ("Qualified immunity shields officials 'when [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *White*, 580 U.S. at 78–79)); *Tripathy*, 103 F.4th at 116 ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights." (quoting *Mullenix*, 577 U.S. at 11)).

"To determine whether a law is clearly established, [the court] considers 'the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law.'" *Matzell*, 64 F.4th at 434 (quoting *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014)). "[T]here does not need to be Second Circuit caselaw explicitly holding that a particular condition is sufficiently serious to find that '[t]he right to be free from such a condition is clearly established.'" *Mallet*, 126 F.4th at 138 n.11 (quoting *Collymore*, 74 F.4th at 31); *see Tripathy*, 103 F.4th at 116 ("We do not require a case directly on point, but existing precedent must have placed the statutory or

constitutional question beyond debate." (quoting *Ashcroft*, 563 U.S. at 741)). "[Q]ualified immunity depends on the facts known to the official at the time of the alleged violation," such that "'[e]ven when [a court] find[s] a right clearly established,' defendants are still immune from damages liability if 'reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition.'" *Tanvir*, 120 F.4th at 1060 n.6 (first alteration in original) (quoting *Wiggins v. Griffin*, 86 F.4th 987, 994 (2d Cir. 2023)). "[I]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Naumovski v. Norris*, 934 F.3d 200, 210 n.12 (2d Cir. 2019) (first alteration in original) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see Tripathy*, 103 F.4th at 116 ("[A] right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Nazario*, 2023 WL 7147386, at *2 ("For a constitutional right to be clearly established, it must be 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001))).

"[T]he Supreme Court has 'stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation.'" *Tanvir*, 120 F.4th at 1060 n.6 (first alteration in original) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Although the Second Circuit has recognized "that a qualified immunity defense 'faces a formidable hurdle' at the motion to dismiss stage 'and is usually not successful,'" *Matzell*, 64 F.4th at 434 (quoting *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022)), "'[l]ike other affirmative defenses, official immunity may be resolved' at that stage 'when the facts establishing it are apparent on the face of the complaint,'" *Tanvir*, 120 F.4th at 1060 n.6 (alteration in original) (quoting *Bangs v. Smith*, 84 F.4th 87, 95 (2d Cir. 2023)). "Where a defendant presents a qualified immunity defense on a motion to dismiss . . . , 'the plaintiff is entitled to all reasonable inferences from the facts alleged,

not only those that support his claim, but also those that defeat the immunity defense.'" *Matzell*, 64 F.4th at 434 (quoting *McKenna v. Wright*, 386 F.3d 432, 435–36 (2d Cir. 2004)); *see also Tillman v. Hoffman*, No. 23-265, 2023 WL 7180675, at *1 (2d Cir. Nov. 1, 2023) (same).

### i. Plaintiff has sufficiently alleged that Demorcy violated his Eighth Amendment right to be free from cruel and unusual punishment

Defendants are not entitled to qualified immunity on the basis that Demorcy did not violate a constitutional right. As discussed in Section II.b.i–ii, *supra*, Plaintiff sufficiently alleges that Demorcy was deliberately indifferent to Plaintiff's serious need for medical care for the injuries he sustained following falling and hitting his head on the toilet stall. Deliberate indifference to the serious medical needs of an incarcerated person violates the person's Eighth Amendment right not to have "cruel and unusual punishment inflicted." *See Estelle*, 429 U.S. at 104–05; *Smith*, 2024 WL 4746554, at *2; *Darby*, 14 F.4th at 128; *Nazario*, 2023 WL 7147386, at *2; *Walker*, 45 F.4th at 610; *Gibson*, 2023 WL 3295843, at *2.

### ii. Plaintiff's right to medical care was clearly established at the time of the challenged conduct

Defendants are not entitled to qualified immunity on the basis that Plaintiff's violated right was not clearly established at the time of the challenged conduct. It was well-established by August 9, 2022 that "deliberate indifference to serious medical needs of prisoners" in violation of the Eighth Amendment encompasses a "prison guard[] . . . intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104–05. Moreover, Plaintiff alleges facts in the Amended Complaint that, if proven, support the inference that a reasonable officer in Demorcy's position would have understood that refusing to allow Plaintiff to be treated for his injuries was unlawful. *See Tanvir*, 120 F.4th at 1060 n.6. Specifically, as discussed in Section II.b.i–ii, *supra*, Plaintiff sufficiently alleges in the Amended Complaint that he sustained an objectively serious injury from forcefully hitting his face on the toilet stall and that Demorcy

consciously disregarded Plaintiff's need for treatment despite hearing Plaintiff recount the details

of his injury and pain to Dr. Brown and despite Dr. Brown informing Plaintiff that he "had likely

suffered a serious injury to his face/jaw" and "needed to be immediately brought to the medical

unit for evaluation."  (Am. Compl. ¶¶ 55–60.)  *See Bright*, 2024 WL 3012043, at *8 (finding

plaintiff "state[d] a deliberate indifference claim" by alleging that he told specifically named

guards responsible for his custody and care "of his condition and the excruciating pain" and his

"suffering," and that they "failed to take appropriate action to get [him] the medical help he

required, despite knowledge of the risk to his health" (internal quotation marks omitted)).

While discovery may ultimately reveal additional facts that could demonstrate that a

reasonable officer in Demorcy's position might not have understood his conduct to be unlawful,

the facts alleged in the Amended Complaint are sufficient to infer that a reasonable person in

Demorcy's position would have known.  *See Walker v. Wright*, No. 17-CV-425, 2018 WL

2225009, at *9 (D. Conn. May 15, 2018) (concluding that the plaintiff had "sufficiently alleged

facts that state a claim of violation of clearly established law" because allegations that the

defendants "should have known that [plaintiff's] symptoms required treatment and, without

treatment, could pose an excessive risk to [his] health" permitted "the reasonable inference that

all reasonable officials would have known that they were violating a clearly established right");

*Est. of Rodriguez v. Simon*, No. 06-CV-125, 2007 WL 2154238, at *9 (D. Vt. Mar. 30, 2007)

(denying qualified immunity defense on a motion to dismiss because the amended complaint

sufficiently alleged that the conduct of the defendant officials "was deliberatively indifferent to

[the plaintiff's] serious medical needs" and the qualified immunity defense "would benefit from

discovery to flesh out more thoroughly the circumstances and motivations of [the officials']

conduct"), *report & recommendation adopted sub nom.*, 2007 WL 2107542 (D. Vt. July 19,

2007); *see also Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (affirming denial of

motion to dismiss on the ground of qualified immunity but noting that "defendant may reali[z]e the qualified immunity defense at successive stages" (citing *Behrens v. Pelletier*, 516 U.S. 299, 307–08 (1996))).

### III.  Conclusion

For the foregoing reasons, the Court denies Defendants' motion to dismiss the deliberate indifference to Plaintiff's medical needs claim against Demorcy.  The Court denies as moot Defendants' motion to dismiss the FTCA claims against the United States for deliberate indifference based on Plaintiff's withdrawal of the claims.  Plaintiff may proceed with his FTCA claims against the United States for negligence, negligent failure to protect, and "denial or delay of medical care and/or medication" and his claims against John Does 1–20.

Dated:  March 24, 2025
       Brooklyn, New York

                                 SO ORDERED:


                                 _____/s/MKB_____
                                 MARGO K. BRODIE
                                 United States District Judge